JaPITCHER, Judge.
This court granted the application for a writ of certiorari filed by the Louisiana Riverboat Gaming Commission, an agency within the Department of Public Safety and Corrections, Public Safety Services (Commission). The Commission sought review of the trial court’s decision that determined that the District Attorney for East Baton Rouge Parish could represent the interests of the people of the State of Louisiana. The trial court ruled that because there was a conflict between the legal interests of the Commission and the legal interests of the State of Louisiana, the Attorney General could not represent both the Commission and the State of Louisiana. For the following reasons, we reverse the ruling of the trial court.

FACTS AND PROCEDURAL HISTORY

On April 11, 1994, the Commission filed a petition for declaratory judgment. The Commission sought a judicial determination of the validity of administrative rules adopted by the Commission. The petition alleged that, pursuant to its rule-making authority, the Commission drafted and adopted rules which construed the provisions of the Louisiana Riverboat Economic Development and Gaming Control Act (Gaming Act) in a manner the Commission believed to be consistent with the declared policy of the state, so as to uphold the intent of the legislature and the constitutionality of the Act. The validity of the Commission’s rules came into dispute; the most controversial rule allows the Commission to issue certificates of preliminary and final approval[1]. It is the position of the Commission that the certificate of approval is principally a vehicle to enable the Commission to secure, from potential applicants, the information ^requisite to making the determinations charged to it under its rule-making authority, and a certification by the Commission that the applicant has met its criteria pertaining to economic development, berth, dock, safety, design, etc.
The Commission’s petition for declaratory judgment was filed pursuant to LSA-R.S. 4:556. which provides, in pertinent part:
A. The division or the commission may obtain a judicial determination of any question of construction or validity of a provi-
sion of this Chapter or any rule or regulation of the division or commission by bringing an action for a declaratory judgment in the Nineteenth Judicial District Court in accordance with the provisions of the Louisiana Code of Civil Procedure.
B. When an appeal is brought by a person other than the division, the division shall be made a party to. the action.
* * ⅝ * * ⅜
*777 Pursuant to LSA-R.S. 4:556 B, the Commission named the Riverboat Gaming Enforcement Division, an agency within the Department of Public Safety and Corrections, Office of State Police (Division), as a party to this action.
On April 19, 1994, the Commission amended the petition to reflect that the caption of the suit was to read as follows:
THE STATE OF LOUISIANA, THROUGH THE LOUISIANA RIVERBOAT GAMING COMMISSION VERSUS THE LOUISIANA STATE POLICE RIVERBOAT GAMING ENFORCEMENT DIVISION
The petition was further amended to reflect that the Division was to be made a defendant in this matter.
On April 19, 1994, Lady Luck Casino Baton Rouge, Inc. (Lady Luck) filed a petition of intervention, claiming that it was an indispensable party to these proceedings. Lady Luck alleged that it had not received one of the fifteen preliminary certificates of approval from the Commission; nevertheless, its application for a license with the Division was still pending. Lady Luck contended that the issuance of the preliminary certificates of approval was an attempt by the Commission to “reduce, limit and usurp” the powers and the duties granted to the Division by the Gaming Act.[2]
On April 26,1994, the District Attorney for East Baton Rouge |4Parish, Doug Moreau, filed a petition for declaratory judgment in this proceeding on behalf of the State of Louisiana[3]. The District Attorney contended that he had the authority to bring this action pursuant to LSA-R.S. 16:1 and La. Const. Art. 5, § 26(B) (1974). The District Attorney alleged that the people of the State of Louisiana had an interest in preserving the integrity of the law as enacted by the legislature; therefore, the state, as a sovereign, had an interest in bringing this action for a declaratory judgment.
The petition filed by the District Attorney alleged that the Commission, pursuant to the legal advice of its statutory legal advisor, the Attorney General, had promulgated administrative rules to govern the activities of the Commission. The petition further alleged that many of these rules exceeded the authority delegated to the Commission by the Act and thus, were null, void and “utterly without effect”.[4]
On April 27, 1994, the Commission filed an opposition to the intervention[5] of the District Attorney of East Baton Rouge Parish. In this opposition, the Commission alleged that (1) the District Attorney of East Baton Rouge Parish had no authority to supersede the Attorney General’s representation of the State of Louisiana and (2) the District Attorney of East Baton Rouge Parish had no authority to intervene in the proceedings.
A hearing on this matter was held on April 28 and May 2, 1994. At the beginning of these hearings, the trial court noted that the only issue for the court to address was whether the District Attorney could intervene or file a petition for declaratory judgment on behalf of the State of Louisiana in lieu of theJjjAttorney General representing the State. Over the objection of the Commission, the District Attorney was allowed to introduce evidence in an attempt to establish a conflict of interest on the part of the Attorney General. It was the position of the Commission that the hearing should be limited to the issue of whether the District Attorney could intervene on behalf of the State of Louisiana.
*778 The trial court ultimately denied the Commission’s opposition to the intervention of the District Attorney. In doing so, the trial court made the following findings:
(1) In this lawsuit, there exists a conflict between the legal interests of the Riverboat Gaming Commission and the legal interests of the State of Louisiana itself.
(2) Because of the conflict, the Attorney General may not represent both the Riverboat Commission and the State of Louisiana in this suit.
(3) The Louisiana Riverboat Economic Development and Gaming Control Act mandates that the Attorney General represent the Riverboat Gaming Commission in all civil proceedings, as he had done by filing this Declaratory Judgment suit on behalf of the Commission.
(4) The District Attorney for the Nineteenth Judicial District is a proper counsel to represent the interests of the people of the State of Louisiana in this action. LA. Const. Art. 5, § 26 and La.R.S. 16:1(B).
The trial court gave its oral reasons for judgment on May 2, 1994 and signed the written judgment on May 4, 1994. On May 4, 1994, the trial court denied a motion for a stay of these proceedings filed by the Commission.
On May 3, 1994, the Division filed an answer to the Commission’s petition for declaratory judgment. The Division alleged that the rules promulgated by the Commission were invalid, null and without effect because the Commission had acted in violation or in excess of its statutory authority.
On May 6, 1994, this Court denied the Commission’s application for a stay of the proceedings pending disposition of the Commission’s application for supervisory writs because the relator had failed to comply with several of the Uniform Rules of Louisiana Courts of Appeal (Docket Number 94 CW 0940).
A second application for a stay of the proceedings was denied by this Court on May 10, 1994 (Docket Number 94 CW 0948). In denying the stay, this Court noted that relator could seek |6expedited review of the writ application once it was filed.
On May 20,1994, this Court ordered that a writ of certiorari issue in this matter. Additionally, all proceedings were stayed pending this Court’s decision on relator’s writ application.

DISCUSSION

The District Attorney filed the petition for declaratory judgment in this proceeding on behalf of the State of Louisiana based on his opinion that the State of Louisiana was not a party to this lawsuit and its interests were unrepresented. Because the State of Louisiana was unrepresented, the District Attorney argued that he had the statutory and constitutional obligation to represent the State. Alternatively, the District Attorney argued that if the Attorney General made the State of Louisiana a party to this lawsuit, then the Attorney General could not represent both the Commission and the State of Louisiana because to do so would be a conflict of interest.
The Commission, on the other hand, argued that this action was instituted by the State of Louisiana through one of its agencies. The Commission argued that the State of Louisiana was already being represented by the Attorney General. Thus, to allow the District Attorney to represent the State of Louisiana would, in effect, allow the District Attorney to supersede the Attorney General in its representation of the State of Louisiana. The Commission contended that this interpretation of the law was an improper expansion of the District Attorney’s powers set forth in LSA-Const. Art. 5, § 26(B) (1974) and LSA-R.S. 16:1B.
Although the trial court initially stated that the issue was whether the District Attorney had the authority to bring this action, the trial court determined that it had to decide first whether there was a conflict of interest because two separate suits, styled identically and with the same suit number, had been filed — one by the Attorney General on behalf of the State, through the Commission, and one by the District Attorney on behalf of the State. Once the trial court concluded that there was a conflict of interest *779 for the Attorney General to represent both the State ofjYLouisiana and the Commission, the trial court determined that the District Attorney was the proper party to represent the State of Louisiana.
We believe that the initial determination which must be made is whether the State of Louisiana was a party to the action before the District Attorney filed the petition for declaratory judgment on behalf of the State of Louisiana. It is quite clear that the petition for declaratory judgment, even as amended, was brought on behalf of the Commission, not on behalf of the State of Louisiana. The petition was filed pursuant to LSA-R.S. 4:556 which provides that the Division or the Commission may obtain a judicial determination of any question of construction or validity of a provision of this Chapter (of the Gaming Act) or any rule or regulation of the Division or Commission. Therefore, we find that the State of Louisiana was not a party to this action.
The issue then to be resolved is whether the District Attorney can bring this action on behalf of the State of Louisiana. In arguing that he has the authority to bring such an action, the District Attorney relies on LSA-R.S. 16:1 and LSA-Const. Article 5, § 26(B) (1974).
LSA-R.S. 16:1 provides that:
A.In each judicial district and in the parish of Orleans, there shall be a district attorney. He shall be elected at the congressional election, beginning in 1984 and every six years thereafter, shall serve a term of six years, and shall take office and begin his term on the second Monday of January following election. He shall have been admitted to the practice of law in the state for at least five years prior to his election and shall have resided in the judicial district for the two years preceding the election. The district attorney for the parish of Orleans shall have resided therein for two years preceding the election. A district attorney may select assistants as authorized by law, and other personnel.
B. The district attorneys throughout the state of their designated assistants, the parish of Orleans excepted, shall represent the state in all civil actions, and shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand juries in his district, and be the legal advisor to the grand juries. He shall perform other duties provided by law.
C. The district attorney for the parish of Orleans or his designated assistant shall have charge of every criminal prosecution by the state in the Criminal District Court for the Parish of Orleans, and represent lathe state in all matters in the Orleans Parish Juvenile Court.
The district attorney or his designated assistant shall be the representative of the state before the grand juries in the parish of Orleans and shall be the legal advisor to the grand juries. He shall perform other duties provided by law.
D. The term of the district attorney for the parish of Orleans in office on the effective date of this Section shall expire on December 31,1978. His successor shall be elected at the same time as district attorneys throughout the state in 1978, and thereafter the successors to the office shall be elected at the same time as the district attorneys throughout the state. (Emphasis ours).[6]
*780 LSA-Const. Art. 5, § 26(B) sets forth the powers and duties of a district attorney and provides as follows:
(B) Powers. Except as otherwise provided by this constitution, a district attorney, or his designated |9assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law. (Emphasis ours).
In contrast, LSA-Const. Art. 4, § 8 (1974) establishes the office of the Attorney General and sets forth the powers and duties of the Attorney General as follows:
Section 8. There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state. The attorney general shall be elected for a term of four years at the state general election. The assistant attorneys general shall be appointed by the attorney general to serve at his pleasure.
As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.
The attorney general shall exercise other powers and perform other duties authorized by this constitution or by law. (Emphasis ours).
A review of the history of the offices of the attorney general and district attorney aids in resolving the issue of whether the District Attorney has the authority to bring this action on behalf of the State of Louisiana. The office of attorney general was created by Article 4, § 7 of the Constitution of 1812, which provided:
There shall be an attorney general for the state, and as many other prosecuting attorneys for the state as may be hereafter found necessary. The said attorneys shall be appointed by the Governor with the advice and approbation of the Senate. Their duties shall be determined by law.
Pursuant to this constitutional article, the following statute was enacted in 1813:
1. Sec. I. An attorney general shall be appointed, whose duty it shall be to prosecute and conduct all suits in which the State of Louisiana shall be concerned, arising within the first judicial district, and to prosecute all delinquencies for crimes and offences [sic] committed against the laws of the State within said district, and to give his opinion, in writing or otherwise, upon all questions of law when required by the governor or by any other civil officer of the State, and there shall likewise be appointed six district attorneys, who shall perform the duties of public prosecutors in lipeach of the judicial districts of the State, in the same manner as is prescribed to the attorney general....
* * * ⅜ * *
4. Sec. IV. The attorney general and the several prosecuting attorneys of this State shall be bound to prosecute or sue in all cases, either civil or criminal, where the State shall be a party.
* * * * * *
The above act was amended in 1831 to include the following provision:
*781 7. No. I. That it shall be the duty of the attorney general to intervene in all suits which may be pending, or which may hereafter be instituted, in any of the courts to this State, held in the city of New-Orleans [sic], or Federal courts of the United States, where he may think the interest of this State is involved, for the purpose of prosecuting or defending such interest; and he may have full power to take such steps in maintenance of the rights of the State in said courts, as, in his discretion, circumstances may require. And that it shall further be the duty of the said attorney general, to institute such suit or suits in behalf of the State, as to him may seem proper, for the recovery of all real estate belonging to the State of Louisiana, and which is adversely claimed and possessed.
As the above excerpts illustrate, the attorney general and the district attorneys were charged by statute with the same duties within their respective judicial districts, with the attorney general responsible for all suits in the first judicial district. However, the attorney general was also charged with the overall duty of asserting the interests of the State when he thought that the interests of the State were involved.
The duty of the attorney general to assert the interests of the State of Louisiana was first placed in the Constitution of 1913. Until the Constitution of 1913 was adopted, none of the Constitutions of this State conferred any powers or duties onto the attorney general or the district attorney. These powers and duties were set forth in statutes only.
Article 97 of the Constitution of 1913 provided:
There shall be an Attorney General for the State, who shall be elected by the qualified electors of the State at large every four years. He shall be learned in the law, and shall have actually resided and practiced law, as a licensed attorney, in the State, for five years preceding his election. He shall receive a salary of five thousand dollars per annum, payable monthly on his own warrant.
There shall be two Assistant Attorneys General for the InState, who shall be appointed by the Attorney General and be removable at his will.
They shall have the same qualifications as the Attorney General.
They shall take charge of and attend to all such legal matters as the State may be interested in, or be a party to, and shall prosecute and defend all suits wherein the State may be a party or may have an interest, when thereto assigned by the Attorney General, and shall generally do, perform and discharge all such other duties as may be assigned to them by the Attorney General; and they shall represent him and act for him and in his stead whenever he may be absent from the State, or be temporarily disabled, from any cause, from acting himself in any matter; and they shall discharge such other duties as may be imposed, and exercise such other powers as may be conferred by law, on the Attorney General. They shall receive the following annual salaries, payable monthly on their own warrants, to-wit: One, Four Thousand Dollars ($4,000.00), and the other, Three Thousand Five Hundred Dollars ($3,500.00.)
Article 125 of the Constitution of 1913, as amended by Acts 1914, No. 914, provided:
There shall be a District Attorney for each Judicial District in the State, who shall be elected by the qualified electors of the judicial district at the same time and for the same term as is provided in Article 109 for District Judges. He shall receive a salary of one thousand dollars per annum, payable monthly on his own warrant. He shall be an actual resident of the District and a licensed attorney in this State. He shall also receive fees; but no fee shall be allowed in criminal cases, except on conviction, which fee shall not exceed five dollars in each case of a misdemeanor. All elections to fill vacancies occasioned by death, resignation or removal shall be for the unexpired term, and the Governor shall fill the vacancy until an election can be held. Provided that the election to fill such vacancy shall be held within sixty days from the date the vacancy occurs. Provided, if
*782 such unexpired term is for a shorter period than one year, the appointee of the Governor shall hold office for said term.
In each Judicial District the General Assembly shall have the power to create and provide for, by legislative act, the office of Assistant District Attorney, said Assistant District Attorney to be selected and appointed by the District Attorney of said Judicial District, subject to removal at his discretion, and commissioned by the Governor.
The said Assistant District Attorney shall possess the qualifications hereinabove provided, and shall be clothed with all the powers of the duly elected and qualified District Attorney under the Constitution and laws of Louisiana, except that the District Attorney shall be entitled to and shall receive all fees and emoluments of the office.
The said Assistant District Attorney shall receive a salary of Six Hundred Dollars per annum, to be paid by the State, payable monthly on his own warrant, and such additional salary as the legislature may fix, to be paid pro rata by the Police Jury of the Parish or Parishes of said Judicial District.
| i2The Constitution of 1921, Art. 7, § 55 first established a Department of Justice, which consisted of an Attorney General, a First and Second Assistant Attorney General, and other necessary assistants and office force. Art. 7, § 56 set forth the qualifications, powers, and duties of the attorney general and provided, in pertinent part, as follows:
The Attorney General and the assistants shall be learned in the law and shall have actually resided and practiced law, as duly licensed attorneys, in the State for at least five years preceding their election and appointment. They, or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the
State. They shall exercise supervision over the several district attorneys throughout the State, and perform all other duties imposed by law.
⅜ ⅝ ⅜ ⅜ ⅜
The Constitution of 1921, Art. 7, § 58 established an office of district attorney for each judicial district in the State. However, the Constitution of 1921 set forth only the powers of the assistant district attorneys. Art. 7, § 61 provided as follows:
The said assistant district attorneys shall possess the qualifications hereinabove provided for, and shall be clothed with all of the powers of district attorneys under the Constitution and laws of the State.
As the previous statutes and constitutional provisions illustrate, district attorneys have never had the power or duty to assert or protect the interests of the State of Louisiana. This power or duty has always been vested with the Attorney General.
The difference in the language used in LSA-R.S. 16:1 B and LSA-Const. Art. 4, § 8 (1974) supports this conclusion. Indeed, the precise language used in LSA-R.S. 16:1 B reflects the legislature’s intent that the authority conferred on the district attorney is more limited than the broader authority vested in the Attorney General and delineated in the Louisiana Constitution. If the legislature had meant that the authority of the Attorney General and the authority of the district attorney to be equal, LSA-R.S. 16:1 B would read the same as Art. 4, § 8 of the Constitution. Thus, the district attorney’s authority is limited to “representation”, Ii3while the Attorney General is specifically authorized to “institute, prosecute or intervene”.
An attempt was made at the Constitutional Convention to give the district attorney concurrent jurisdiction in his district with the Attorney General in civil matters when the following amendment to Art. 5, § 28(B) was proposed:
A district attorney has the entire charge and control of every criminal prosecution instituted or pending in his district, and shall represent concurrently with the at *783 torney general the state in all civil actions instituted or pending in his district.
6 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Aug. 23, 1973 at 915-917. This amendment was subsequently withdrawn by the Convention.
Presently, LSA-Const. Art. 5, § 26(B) (1974) contains all of the powers and duties enumerated in LSA-R.S. 16:1(B) except the power to represent the state in all civil actions. The district attorney has always been limited in his representation of the “state” to those actions in his district whereas the Attorney General has only been limited when he represented the parish of Orleans “as district attorney”.[7]
Because the Attorney General is vested by LSA-Const. Art. 4, § 8 (1974) with the authority to institute, prosecute, or intervene in any civil action or proceeding, as necessary for the assertion or protection of any right or interest of the state, we find that the District Attorney of East Baton Rouge Parish is without authority to institute this action on behalf of the State of Louisiana.
JuCONCLUSION
For these reasons, we reverse the decision of the trial court. The costs of this appeal, in the amount of $401.71, are assessed against the District Attorney for East Baton Rouge Parish.
REVERSED.

. According to the rules, the certificate of preliminary approval is a certificate approving construction of a riverboat in accordance with a certificate and conditions thereto and preliminary approval of a proposed riverboat route and operations, as described in the application. The certificate of final approval is a certificate issued by the Commission when and if, upon completion, the vessel and all support facilities comply with all requirements of the act and the regulations and, after a final inspection, have been certified by the applicant to be constructed in accordance with the riverboat plans, specifications and any conditions previously approved by the Commission.

. LSA-R.S. 4:525 gives the Division the authority to issue up to fifteen licenses to conduct gaming activities on a riverboat.

. The District Attorney filed this petition with the same docket number as the pending petition for declaratory judgment.

. On May 5, 1994, the District Attorney amended his petition for declaratory judgment, naming as indispensable parties all persons who had ever applied for a license with the Division or who had applied for some form of approval from the Commission.

.It was the Commission's position that the pleadings filed by the District Attorney should more appropriately be styled as an intervention since he purported to represent a third person (the State of Louisiana) having an interest in a pending action to enforce a right related to or connected with the object of the pending action.

. Before LSA-R.S. 16:1 was amended by Act 1975, No. 686, Sec. 1, the statute provided as follows:
The district attorneys throughout the state, the parish of Orleans excepted, shall attend sessions of the courts in each of their respective judicial districts and shall represent the state in all criminal and civil actions.
The source of LSA-R.S. 16:1 was Act 1880, No. 96, which provided, in pertinent part:
Section 1. That it shall be the duty of the district attorneys throughout the State (the parish of Orleans excepted) to attend the sessions of the courts in each of their respective judicial districts, and shall represent the State in all civil and criminal actions. In the districts in which the Supreme Court shall hold sessions they shall also represent the State in all criminal cases coming before said court.
Sec. 2. That it shall be the duty of the district attorney and assistant district attorney of the parish of Orleans to conduct the prose *780 cution of all criminal cases coming before the criminal courts of said parish.
sfc sjs * * ⅜ #
Sec. 4. That the several district attorneys in this State (the parish of Orleans excepted) shall advise the police juries and parish school board upon due application made, and shall represent them in all suits.
Sec. 5 That the district attorneys of this State (the parish of Orleans excepted) shall receive a commission of five (5) per cent, on all amounts they may collect in any suit in favor of the State, parish or school boards, and the commissions, as now allowed by law, for collections on forfeited bonds.
[[Image here]]

. An example of this is contained in LSA-R.S. 16:2 A which provides as follows:
The district attorneys of the several judicial districts of Louisiana, other than the parish of Orleans, shall ex officio be the regular attorneys and counsel for the police juries, parish school boards, and city school boards within their respective districts and of every state board or commission domiciled therein, in-eluding levee boards, hospital and asylum boards, education boards, and all state boards or commissions the members of which, in whole or in part, are elected by the people or appointed by the governor or other prescribed authority, except state boards and commissions domiciled at the city of Baton Rouge, parish of East Baton Rouge, and all boards in charge or in control of state institutions.